OPINION
{¶ 1} Defendant-appellant Randy Coleman appeals the February 27, 2003 Judgment Entry entered by the Stark County Court of Common Pleas, which granted judgment in favor of plaintiff-appellee Diebold Credit Corporation ("Diebold Credit") and against appellant, in his individual capacity, following a bench trial.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 18, 2001, Diebold Credit filed a complaint against appellant; Smart ATM Management, Ltd; ATM International, Inc.; and Vicki Coleman.[1] Diebold Credit subsequently amended its complaint, removing Vicki Coleman as a defendant as Diebold Credit was unable to complete service of process upon Vicki Coleman. In counts one and two of the amended complaint, Diebold Credit alleged Smart ATM and ATM International defaulted on their lease agreements with Diebold Credit. In count three, Diebold Credit claimed appellant fraudulently induced Diebold Credit to enter into the lease agreement with ATM International. In count five, Diebold Credit alleged appellant wrongfully transferred assets from Smart ATM and ATM International.[2] Diebold Credit subsequently filed a motion for summary judgment relative to counts one and two, which the trial court granted via Judgment Entry filed September 4, 2002. The parties tried the remaining causes of action against appellant to the trial court on January 3, 2003.
 {¶ 3} On July 15, 1998, Diebold Credit and ATM International entered into Master Lease/Purchase Agreement No. 10344 which covered 200 Diebold, Inc. automatic teller machines. Pursuant to Master Lease No. 10344, ATM International agreed to pay Diebold Credit a rental fee of $149 per unit per month or a total monthly rental payment of $29,800.
 {¶ 4} On July 21, 1998, Diebold Credit and ATM International executed Schedule "A" and Acceptance Certificate to Master Lease No. 10344. Schedule "A" identifies, by serial number, the ATM machines which were subject to Master Lease No. 10344. By executing the Acceptance Certificate, ATM International acknowledged its receipt and acceptance of the ATMs specified. Diebold, Inc. had delivered the ATMs subject to the lease prior to the execution of the relevant lease documents by ATM International and Diebold Credit. The Acceptance Certificate indicates the equipment description and serial numbers were "to be provided by ATM International, Inc. and Diebold, Inc." At trial, appellant testified he personally reviewed Schedule "A", but did not approve it as such list had to be verified. John Simon, a representative of Diebold Credit, testified a list of the 200 ATMs subject to Master Lease No. 10344 was not finalized at the time the lease was executed (July 15, 1998), and ATM International, Diebold, Inc., and Diebold Credit were to work together in compiling the final equipment list.
 {¶ 5} In October, 1999, Diebold, Inc. entered into an agreement with Smart ATM for the sale of 250 used Fujitsu Model 7015 automatic teller machines for a total purchase price of $1,250,000. On October 28, 1999, Diebold, Inc., Diebold Credit, and Smart ATM executed an Assignment and Delegation. Pursuant to this agreement, Smart ATM assigned its right to purchase and receive title to the Fujitsu ATMs to Diebold Credit, which purchased the equipment from Diebold, Inc., acquired title thereto, and leased the equipment back to Smart ATM. Diebold Credit and Smart ATM entered into Master Lease Agreement No. 10424 on October 30, 1999. At this same time, ATM International executed an Unconditional Guarantee, guaranteeing the prompt and punctual performance by Smart ATM of all obligations and responsibilities under Master Lease No. 10424 and any documents related thereto. Appellant signed all of the aforementioned documents as President CEO of Smart ATM and ATM International.
 {¶ 6} Prior to execution of Lease No. 10344 and subsequent to its decision to purchase ATMs from Diebold, Inc., ATM International entered into an agreement with Chilin Huang for the sale of ATM machines in 1996. Thereafter, on September 4, 1997, ATM International and Huang entered into a second ATM Purchase and Operating Agreement for the sale of additional ATM machines. According to the testimony of John Simon, 117 of the units ATM International sold to Huang were units subject to Master Lease No. 10344 and identified in Schedule "A." Simon explained, under the terms of the lease, Diebold Credit retained ownership of the ATM units, and ATM International's sale of some of these units to a third party prior to the execution of the lease was a direct violation of the lease agreement. Simon noted Diebold Credit would not have entered into the lease had it been aware of such action by ATM International.
 {¶ 7} Simon further testified ATM International had repeated opportunities to question or change the serial numbers of the units listed on Schedule "A," but did not do so. Without qualifications to Schedule "A," ATM International made 23 monthly payments under Master Lease No. 10344 during the first 2 years after the execution of the lease. Monthly invoices from Diebold Credit included a summary page which detailed the units and serial numbers subject to the lease. Appellant never requested changes or advised Diebold Credit of error. According to Simon, the documents in ATM International's account file with Diebold Credit reveal Diebold Credit went back and forth between Diebold, Inc. and ATM International, attempting to identify and finalize the list of the units subject to Master Lease No. 10344. Simon noted, at the time the parties executed the lease, there remained only 20 or 30 units to be finalized. Simon acknowledged the Schedule "A" list was revised on October 1, 1998, and could only assume this revised list represented the final list of units covered.
 {¶ 8} Diebold Credit called appellant as if on cross-examination during its case-in-chief. When questioned about Schedule "A," appellant testified he never told Diebold Credit certain units subject to the lease had already been sold to Huang because there was no need to do so as he had advised Diebold Credit the list was incorrect. He stated, "I thought there were some of those sites that were on the list were already sold to other people, not just [Huang], but third-party merchants, maybe some other investors. So the list needed to be compiled and verified, and that's what we both agreed to do is that we would do that." Tr. at 55. Appellant noted he personally was not involved in the process of compiling the list and never provided Diebold Credit with a substitute list. Appellant continued he never made changes to Schedule "A" because "I wasn't suppose to. It was supposed to be Diebold and our office — and the ATM International office was supposed to do it. I had nothing to do with the list." Tr. at 57. Appellant conceded, although he had nothing to do with the compilation of the list, he signed the lease agreement.
 {¶ 9} Appellant further testified a finalized list could not be compiled because Diebold, Inc. never sent their technicians to verify machine numbers for ATM International. Appellant acknowledged Diebold Credit had a procedure whereby ATM International could buy certain units subject to the lease, and replace those units with different units. Appellant explained he never followed through with that procedure because he never sold any of Diebold Credit's units. Although Huang paid ATM International $1.6 million, appellant testified Huang did not have actual, physical title to the machines he had purchased, but on the other hand, Diebold Credit had title to those machines, and had UCC-1's filed on those machines.
 {¶ 10} Appellant made oral motions to dismiss the third and fifth causes of action pursuant to Civ. R. 41(B)(2) at the close of Diebold Credit's case. The trial court denied both motions. At the close of the evidence, the trial court ordered both parties to prepare findings of fact and conclusions of law, and instructed the parties to file any desired supplemental briefs in addition to the trial briefs previously filed. Via Judgment Entry filed February 27, 2003, the trial court granted judgment in favor of Diebold Credit and against appellant, in his individual capacity, on count three of Diebold's amended complaint. With respect to count five, the trial court granted judgment in favor of appellant, finding Diebold Credit had failed to meet its burden of proof.
 {¶ 11} It is from this judgment entry appellant appeals, raising the following assignments of error:
 {¶ 12} "I. The trial court erred by denying appellant Coleman's Civ. R. 41(B)(2) Motion to dismiss the third cause of action raised in appellee Diebold Credit Corporation's amended complaint.
 {¶ 13} "II. The trial court's judgment against appellant Coleman on count three of appellee Diebold Credit Corporation's amended complaint was against the manifest weight of the evidence because appellant coleman did not commit conversion nor did he make any knowing or reckless false presentation to appellee Diebold Credit Corporation upon which appellee justifiably relied."
 I {¶ 14} In his first assignment of error, appellant maintains the trial court erred in denying his Civ. R. 41(B)(2) motion to dismiss the third cause of action.
 {¶ 15} Civ. R. 41(B)(2) provides, in pertinent part:
 {¶ 16} "After the plaintiff, in an action tried by the court without a jury, has completed presentation of his evidence, the defendant, * * * may move for a dismissal on the grounds that upon the facts and the law, the plaintiff has shown no right to relief."
 {¶ 17} Civ. R. 41(B)(2) permits a defendant in a nonjury action to move for dismissal of the action after the close of the plaintiff's case. Dismissals under Civ.R. 41(B)(2) are similar in nature to directed verdicts in jury actions; however, the standards for the two motions are not the same. See Civ.R. 41(B)(2) and Comment 3. Because a Civ.R. 41(B)(2) dismissal is used in nonjury actions, it requires the trial court and reviewing court to apply different tests. Central Motors Corp.v. Pepper Pike (1979), 63 Ohio App.2d 34, 48.
 {¶ 18} Civ.R. 41(B)(2) specifically provides the trial court may consider both the law and the facts. Thus, under the rule, the trial judge, as the trier of fact, does not view the evidence in a light most favorable to the plaintiff, but instead actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. See L.W. Shoemaker, M.D., Inc. v. Connor (1992),81 Ohio App.3d 74; Harris v. Cincinnati (1992), 79 Ohio App.3d 16. Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail. Fenley v. AthensCty. Genealogical Chapter (May 28, 1998), Athens App. No. 97CA36, citing 3B Moore, Federal Practice (1990), Paragraph 41.13(4), at 41-177. However, if the judge finds the plaintiff has proven the relevant facts by the necessary quantum of proof, the motion must be denied and the defendant is required to put on evidence. Central Motors Corp, supra.
 {¶ 19} "A trial court's ruling on a Civ. R. 41(B)(2) motion will be set aside on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence." Ogan v. Ogan (1997),122 Ohio App.3d 580, 583 (Citation omitted).
 {¶ 20} To prove fraud, a plaintiff must establish the following elements: (1) a representation, or silence where there is a duty to disclose, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred, (4) with the intent to mislead another into relying on it, (5) justifiable reliance on the representation, and (6) resulting injury proximately caused by the reliance. Williams v. Aetna Financial Co. (1998), 83 Ohio St.3d 464,475.
 {¶ 21} In this case, appellant moved the trial court for an involuntary dismissal at the conclusion of Diebold Credit's case-in-chief, arguing appellee failed to establish the elements of fraud. Accordingly, we will review the evidence presented during that phase of the trial. Based upon the facts set forth supra and upon review of the testimony ascertained during appellee's case-in-chief, we find that the trial court's ruling denying appellant's motion was not against the manifest weight of the evidence. Likewise, we cannot say that the trial court's ruling was incorrect as a matter of law. We conclude that the trial court did not err in denying appellant's motion.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, appellant raises a manifest weight of the evidence claim.
 {¶ 24} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 25} Upon review of the entire record in this matter, we find the trial court's judgment was not against the manifest weight of the evidence. Appellant testified he advised Diebold Credit ATM International was selling units or had sold units to third parties. Diebold Credit presented appellant with Schedule "A" and at least one subsequent revision to the list. Despite agreeing to do so by signing Schedule "A" and Acceptance Certificate, appellant never personally, or through his employees, reconciled the list. Appellant was in a position to know, or to gather the information on, which units were sold, but failed to do so. The trial court as the trier of fact was in the best position to assess the credibility of the witnesses and was free to accept or reject any or all of the testimony of the witnesses. The trial court chose not to believe appellant's testimony. We will not second guess the trial court's credibility call.
 {¶ 26} Appellant's second assignment of error is overruled.
 {¶ 27} The judgment of the Stark County Court of Common Pleas is affirmed.
Wise, J. and Boggins, J. concur.
[1] Smart ATM Management, ATM International, and Vicki Coleman are not parties to this appeal.
[2] In its fourth cause of action, Diebold Credit sought the appointment of a receiver, which the trial court granted.